EL PUEBLO DE PUERTO RICO, apelado, *v.* ESTEBAN NAR-
VÁEZ NARVÁEZ, acusado y apelante.

*Número:* CR-86-46 *Resuelto:* 30 de junio de 1988

*José A. Vargas* y *Bautista De la Cruz Sierra,* abogados del apelante; *Norma Cotti Cruz, Subprocuradora General, Reina Colón de Rodríguez, Subprocuradora General Interina* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogadas de El Pueblo.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El presente recurso nos brinda la oportunidad de examinar el alcance del Art. 247(c) del Código Penal de 1974[1] que acrimina el intento de influir en un jurado.

El 16 de mayo de 1986, el acusado apelante fue declarado culpable por un Jurado por infracción al Art. 247(c) del Código Penal, 33 L.P.R.A. sec. 4443(c), intento de influir en un jurado. El tribunal le impuso una sentencia fija de seis (6) años de presidio que suspendió a tenor con lo dispuesto en la Ley sobre Sentencias Suspendidas, Ley Núm. 259 de 3 de abril de 1946, según enmendada.[2]

No conforme, apeló planteando la comisión de los errores siguientes: (1) insuficiencia de la acusación para imputar de-

[1] Código Penal de 1974, según enmendado por la Ley Núm. 101 de 4 de junio de 1980 (33 L.P.R.A. sec. 4443(c)).

[2] 34 L.P.R.A. sec. 1027.

lito; (2) error en la apreciación de la prueba que llevó al tribunal a denegar una moción de absolución perentoria, al haber dejado la decisión en manos del Jurado,[3] y (3) habérsele condenado a seis (6) años de reclusión en vez de cuatro (4) años, que es la pena mínima.

I

*Los hechos*

Los hechos que dieron lugar a la convicción son los siguientes. La Sra. Elizabeth Meléndez Faría, testigo del Ministerio Público, declaró que hacía seis (6) años trabajaba como oficinista en el Centro de Envejecientes del Municipio de Vega Baja. Era compañera de trabajo del acusado apelante Narváez Narváez y lo conocía de vista desde hacía bastante tiempo, pues cuando ella era estudiante él era chofer de autobús escolar. El 22 de agosto de 1984, el acusado apelante se presentó a la oficina donde ella trabajaba y le preguntó si su esposo era Juan Burgos Rosado, y si éste estaba actuando como jurado. Ella contestó que sí, que Burgos Rosado era su esposo. Inquirió sobre cómo se había enterado que él era jurado en un proceso criminal. El acusado apelante le informó que había estado en la sala del tribunal cuando habían entrevistado a Burgos Rosado para un panel de jurado en un caso que se estaba ventilando contra un pariente suyo. Continuó diciéndole que en ese caso estaba involucrado un policía, que era quien había hurtado la mercancía; su pariente sólo la había comprado y ahora querían echarle la culpa. Ella le indicó que no podía hacer nada por él; que su esposo no hablaba de lo que ocurría en el tribunal. A ésto el acusado le dijo "que él anteriormente había actuado como jurado y que él sabía como eran las cosas".[4] Después de

---

[3] Por realmente plantear el mismo error, hemos resumido los señalamientos de error números dos (2) y tres (3) en uno solo.

[4] T.E., pág. 6.

decir esto, se fue y la testigo no volvió a verlo hasta el día del juicio.

Luego del incidente antes relatado, la señora Meléndez Faría se sintió tranquila y trabajó todo el día. Al regresar a su hogar contó lo ocurrido a su esposo. Éste le dijo que había prestado un juramento al tribunal y que, por lo tanto, iba a tener que informar sobre esto.

El testigo Burgos Rosado corroboró sustancialmente la versión de su esposa. Expresó, además, que informó sobre el asunto al tribunal y que entendía que el acusado había hablado con su esposa para que él "tuviera conocimiento de eso, para que viera si era verdad la versión que contaron en el juicio para ver si era verdad". E.N.P., pág. 4.[5]

## II

*La institución del Jurado*

A pesar de que hace más de doscientos (200) años Sir William Blackston describió el juicio por jurado como el privilegio más trascendental que una persona puede disfrutar o desear, no fue hasta principio de este siglo que en Puerto Rico se estableció el juicio por jurado en casos criminales. Esta institución, ajena a nuestra tradición civilista, proviene del sistema de derecho común anglosajón y nos llega a través de Estados Unidos. Su historia se ha trazado a la Inglaterra del siglo XI. En aquella época, el Jurado lo componía un grupo de vecinos del demandado o acusado que se le permi-

---

[5] Por ser la narración más favorable al acusado apelante, hemos citado de la exposición narrativa de la prueba sometida por el acusado. Tanto el acusado como el fiscal sometieron exposiciones narrativas de la prueba. El tribunal no las aprobó ni certificó. Luego de escuchar a las partes, el tribunal determinó que los conflictos que surgían entre ambas no eran "otra cosa que el producto de la manera en que se expresan algunos detalles y el lugar en la narración donde se ubican dichas expresiones", —resolución y orden de 8 de mayo de 1987— y ordenó transcripción del testimonio de la testigo Elizabeth Meléndez Faría. Nada dispuso sobre el testimonio del testigo Juan Burgos Rosado.

tía a éste traer al tribunal para que actuaran·como testigos y juzgadores de los hechos. 4 *Blackston Commentaries* Cap. 27, pág. 342 (1966); R.J. Simon, *The Jury: Its Role in American Society*, Massachusetts, Ed. Lexington Books, 1980, pág. 5; C.R. Noriega, *El derecho a juicio por jurado en Puerto Rico*, 11 (Núm. 1) Rev. Jur. U.I.A. 15 (1976).

Las funciones del Jurado fueron gradualmente evolucionando hasta convertirlo en el juzgador de los hechos bajo las guías del tribunal. Los colonizadores ingleses transplantaron esta institución a Estados Unidos adaptándola a sus necesidades. Entendieron que era indispensable para proteger y preservar los derechos y libertades fundamentales de los ciudadanos. J.E. Rooks, *Sources of Trial by Jury in America*, 19 (Núm. 9) Trial 46 (1983); P.D. Carrington y B.A. Babcock, *Civil Procedure: Cases and Comments on the Process of Adjudication*, 2da ed., Boston, Ed. Little Brown and Co., 1977, Cap. I, págs. 1–21. En palabras de Tomás Jefferson: "I consider trial by jury as the only anchor ever yet imagined by man by which a government can be held to the principles of the Constitution." L. Pressler, *The Right to Trial by Jury: "The Best Appendage of Freedom"*, 19 (Núm. 9) Trial 56 (1983). En *Pueblo v. Rivera Suárez*, 94 D.P.R. 510, 515 (1967), reconocimos, sin embargo, que "[d]istinto a la tradición imperante en los Estados Unidos . . . en nuestro medio el juicio por jurado, si bien actualmente es un derecho garantizado constitucionalmente, no es un ingrediente esencial en nuestro procedimiento".

Ahora bien, en nuestro sistema de derecho es principio fundamental que la culpabilidad de un imputado de delito tiene que ser probada más allá de duda razonable. *Pueblo v. Ortiz Morales*, 86 D.P.R. 456 (1962); *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545 (1974); *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. Rivero, Lugo y*

*Almodóvar,* 121 D.P.R. 454 (1988). La culpabilidad la tiene que determinar el juzgador de los hechos a base de la evidencia presentada en el juicio. Esta evidencia tiene que ser, además de suficiente, satisfactoria y producir certeza o convicción moral en una conciencia exenta de preocupación o en "un ánimo no prevenido". *Pueblo v. Carrasquillo Carrasquillo,* supra, pág. 552. Es, pues, ingrediente esencial de la institución del Jurado como juzgador de los hechos que los miembros que lo componen tengan "un ánimo no prevenido", de forma tal que sean capaces de juzgar la culpabilidad o inocencia del imputado exclusivamente a base de la evidencia que se presente en el juicio. Cualquier intento de traer a la atención de un jurado hechos fuera del proceso criminal o de cualquier otra forma tratar de influenciar su actuación para así favorecer a una de las partes, desvirtúa la naturaleza del proceso, menoscaba los fines de la institución del Jurado y mina la fe pública en el sistema de justicia criminal. El Art. 247 del Código Penal de 1974, *supra,* va dirigido precisamente a proteger la institución del Jurado contra el efecto corrosivo de este tipo de actuación. Este artículo dispone que:

Será sancionada con pena de reclusión por un término fijo de seis (6) años, *toda persona que intentare influir* sobre algún juez, *jurado* o persona citada o sorteada como tal, o elegida o nombrada como árbitro, o persona autorizada por ley para ·oír y resolver una cuestión o controversia, *por lo que respecta a su veredicto a [sic] decisión en cualquier causa o procedimiento que se hallare pendiente ante ella* o que fuere a ser sometida a su resolución, valiéndose al efecto de algunos de los siguientes medios:

(a) Cualquier comunicación, oral o escrita, tenida con dicha persona, excepto en el curso ordinario de los procedimientos.

(b) Cualquier libro, papel o documento mostrádole fuera del curso regular de los procedimientos.

(c) Cualquier amenaza, intimidación, *persuasión o súplica.*

En cualquiera de las circunstancias anteriores, de mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cuatro (4) años. (Énfasis suplido.) 33 L.P.R.A. sec. 4443.

## III

*La acusación*

En el primer señalamiento el acusado apelante alega que la acusación de intento de influir en un jurado no imputa delito, porque no se utilizaron expresamente las palabras "persuasión o súplica". El señalamiento no tiene mérito. Veamos. La acusación lee como sigue:

> El referido acusado, Esteban Narváez Narváez, allá en o para el 22 de agosto de 1984, y en Vega Baja, Puerto Rico, que forma parte del Tribunal Superior de Puerto Rico, Sala de Bayamón, P.R., allí y entonces, *ilegal, voluntaria,* maliciosa y criminalmente, *a sabiendas, habló con la Señora Elizabeth Meléndez Faría, para que ésta hablara con su esposo, Juan Burgos Rosado, qui[e]n había sido seleccionado para servir como jurado,* en el Tribunal Superior de P.R. Sala de Bayamón, P.R.[,] *para que ésta influyera con el mismo a los fines de que tratara de resolver a favor una cuestión* o controversia *por lo que respecta a su veredicto* o decisión en una causa o procedimiento que fuere a ser sometida a su Resolución, *valiéndose dicho imputado de una comunicación oral tenida con la referida señora fuera del curso ordinario de las operaciones.* (Énfasis suplido.) Alegato del apelante, págs. 4–5.

El pliego de acusación tiene el propósito de informar al acusado del delito por el cual se le procesa. Éste deberá contener "[u]na exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común". Regla 35(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Reiteradamente hemos expresado que la "exposición no tendrá que emplear estrictamente

las palabras usadas en la ley y podrá emplear otras que tengan el mismo significado.'. . . . [N]o es para ello necesario seguir ningún lenguaje estereotipado o técnico o talismánico". *Pueblo v. Calviño Cereijo*, 110 D.P.R. 691, 693–694 (1981); *Pueblo v. Santiago Cedeño*, 106 D.P.R. 663, 666–667 (1978); *Pueblo v. Meléndez Cartagena*, 106 D.P.R. 338, 341 (1977).

En el caso de autos la acusación es suficiente en derecho. El acusado quedó debidamente notificado de los hechos y del delito que se le imputaba. Quedó informado de que trató de influenciar al jurado Burgos Rosado en relación con el veredicto que éste debía rendir en un proceso criminal que se seguía contra un pariente del acusado apelante. Esta gestión la llevó a cabo a través de la señora Meléndez Faría, esposa del jurado. Estos hechos ciertamente configuran una violación al Art. 247(c) del Código Penal de 1974, *supra*.

## IV

*La malicia y el delito de intento de influenciar a un jurado*

El acusado apelante también alega que el tribunal erró al apreciar la prueba y al no absolverlo perentoriamente. Su contención básica es que el acercarse a la señora Meléndez Faría fue un acto carente de malicia o intención criminal; que más bien respondió al sentimiento de afecto hacia un pariente, sin ánimo de desviar la justicia; que su propósito fue suplir una información para ayudar a hacer justicia.

■■■■ El Art. 247 del Código Penal de 1974, *supra*, incorporó las disposiciones del derogado Art. 108 del Código Penal de 1937 (33 L.P.R.A. sec. 365),(6) que a su vez tiene su

---

(6) El Art. 108 del Código Penal de 1937 leía:

"Incurrirá en una multa máxima de cinco mil dólares, o pena de presidio por un término máximo de cinco años, toda persona que intentare sobornar a algún jurado o persona citada o sorteada como tal, o elegida o nombrada como árbitro,

génesis en el Art. 95 del Código Penal de California, incorporado a nuestro ordenamiento penal a través del Art. 108 del Código Penal de 1902. Este artículo que, al igual que la institución del Jurado, proviene del derecho común anglosajón,(7) según expresamos anteriormente, tiene como propósito im-

---

por lo que respecta a su veredicto o decisión en cualquiera causa o procedimiento que se hallare pendiente ante ella o se sometiere a su resolución, valiéndose al efecto de alguno de los siguientes medios:

1. Cualquiera comunicación, oral, o escrita, tenida con dicha persona, excepto en el curso ordinario de los procedimientos.

2. Cualquier libro, papel o documento traído a la vista, no siendo durante el curso regular de los procedimientos.

3. Cualquiera amenaza, intimidación, persua[s]ión o súplica; o

4. Cualquiera promesa o seguridad de algún beneficio pecuniario o de otra índole." *Código Penal de Puerto Rico*, San Juan, Negociado de Materiales, Imprenta y Transporte, 1937, pág. 65.

(7) En Estados Unidos este delito se conoce como *embracery* y proviene del antiguo derecho común. Se define de la manera siguiente:

"[T]he offense of attempting to corrupt, influence, or instruct a jury or juror or of inducing them in any way, such as by promises, persuasions, entreaties, money, entertainment, etc., except by the strength of evidence and the arguments of counsel in open court, to be more favorable to one side of a case than to the other." (Escolios omitidos.) *E.g.*, 26 Am. Jur. 2d *Elections* Sec. 1, pág. 619 (1966).

El Art. 95 del Código Penal de California dispone que:

"Every person who corruptly attempts to influence a juror, or any person summoned or drawn as a juror, or chosen as an arbitrator, or umpire, or appointed a referee, in respect to his verdict in, or decision of any cause, or proceeding, pending, or about to be brought before him, either:

One - By means of any communication, oral or written, had with him except in the regular course of proceedings;

Two - By means of any book, paper, or instrument exhibited, otherwise than in the regular course of proceedings;

Three - By means of any threat, intimidation, persuasion, or entreaty; or,

Four - By means of any promise, or assurance of any pecuniary or other advantage;

—is punishable by fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison." Pen. C.A., sec. 95.

Del Art. 247 del Código Penal de 1974 (33 L.P.R.A. sec. 4443) se eliminó el requisito de que para incurrir en la conducta delictiva allí prohibida, hubiera que probar que medió "cualquier promesa o seguridad de algún beneficio pecuniario o de otra índol[e,] ya que esta modalidad queda comprendida en el delito de soborno". D. Nevares-Muñiz, *Código Penal de Puerto Rico*, San Juan Ed. Rev. C. Abo. P.R., 1986, pág. 412.

pedir que se trate de obstruir la función judicial subvirtiendo la naturaleza de la institución del Jurado mediante el intento de influenciar las actuaciones de uno de sus integrantes.[8] Una de las modalidades de este delito es el llevar a cabo dicho intento de influenciar mediante la utilización de "persuasión o súplica". Esta gestión puede ser realizada directamente con el jurado o a través de terceras personas o medios.

El Art. 14 del Código Penal de 1974 (33 L.P.R.A. sec. 3061) dispone que la intención se manifiesta por las circunstancias relacionadas con el delito, la capacidad mental y las manifestaciones y conducta de la persona. El Art. 15,[9] a su vez, establece que el delito es intencional "[c]uando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión . . .". Sobre este particular la Prof. Dora Nevares-Muñiz, en su análisis editorial a este artículo, nos indica que "[s]e trata de aquella situación en que la persona tiene un deseo expreso de efectuar el acto y quiere la producción del resultado, el cual ratifica con su actuación".[10]

La conducta acriminada en el Art. 247(c) del Código Penal de 1974, *supra*, no exige malicia. El delito se comete cuando se intenta llevar a cabo el acto prohibido: ejercer influencia sobre un jurado. La intención constituye una cuestión de hecho a ser evaluada por el juzgador de los hechos, Jurado o juez. En el caso de autos, de un análisis de las circunstancias concomitentes, se puede razonablemente inferir que era la intención del acusado apelante ejercer, a

---

[8] Para interpretar estatutos similares, véanse: *United States v. Ogle*, 613 F.2d 233 (10mo Cir. 1979); *Osborn v. United States*, 385 U.S. 323 (1966); *State v. Porter*, 242 P.2d 984 (1952).

[9] Código Penal de 1974 (33 L.P.R.A. sec. 3062(a)).

[10] Nevares-Muñiz, *op. cit.*, pág. 28.

través de la señora Meléndez Faría, influencias sobre el jurado Burgos Rosado para que éste actuara de forma favorable a un pariente suyo que estaba siendo enjuiciado. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, Sec. 5.6.3, págs. 164–165; E.L. Chiesa, *Práctica Procesal Puertorriqueña, Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, Cap. III; *Murcelo v. H.I. Hettinger & Co.*, 92 D.P.R. 411 (1965).[11] La "consecuencia natural o lógica" de la conversación que el acusado apelante sostuvo con la testigo Meléndez Faría era que ésta relatara lo acontecido a su esposo. Así pretendía el acusado apelante lograr que la información que favorecía a su pariente llegara a oídos de un jurado del caso criminal que se seguía contra éste. El juzgador de los hechos tuvo ante sí prueba suficiente para concluir que las actuaciones llevadas a cabo por el acusado apelante fueron realizadas con la intención de influir sobre un jurado mediante "persuasión o súplica". Reiteradamente hemos resuelto que, en ausencia de error manifiesto, prejuicio, parcialidad o pasión, no intervendremos con las determinaciones que haga el juzgador de los hechos. *Pueblo v. Cabán Torres*, supra; *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188 (1986); *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 826 (1983); *Pueblo v. Borrero Robles*, 113 D.P.R. 387 (1982); *Pueblo v. López Pérez*, 106 D.P.R. 584 (1977). No hay indicio de ello en el presente caso.

En el caso de autos el delito se configuró al darse los hechos siguientes: (1) el acusado solicitó a una persona, en este caso la esposa de un jurado; (2) que hablara con un jurado, su esposo, en relación con el proceso criminal en que éste actuaba; (3) para que dicho jurado conociera de unos hechos que favorecían a la persona que estaba siendo enjuiciada en dicho proceso.

---

[11] También, véase opinión disidente de la Juez Asociada Señora Naveira de Rodón en *Díaz v. E.L.A.*, 118 D.P.R. 395 (1987).

 Ahora bien, aun suponiendo que el propósito del apelante al conversar con la testigo Meléndez Faría fuese el ayudar a que se hiciera justicia, ésto no coloca su conducta fuera del alcance del Art. 247(c) del Código Penal de 1974, *supra*. El que una persona estime que lo que está haciendo es correcto o ayuda a hacer justicia no constituye una defensa. Cualquier información relacionada con un proceso criminal que un ciudadano estima importante para el bien de la justicia deberá traerla a la atención de las autoridades apropiadas correspondientes, en este caso el fiscal o el abogado de la defensa, para que éstas, de entenderlo procedente, la traigan a la atención del tribunal. Permitir lo que el acusado apelante pretende daría al traste con las normas más básicas y elementales del debido proceso de ley consagrado en la Carta de Derechos. Art. II, Sec. 7 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1.

## V

### *Circunstancias atenuantes*

 Por último, plantea el acusado apelante que erró el foro de instancia al no considerar las circunstancias del delito en sí y el informe sociopenal presentencia como atenuantes, y al fijar la pena fija de seis (6) años de presidio en vez de cuatro (4) años. El planteamiento es frívolo. El Art. 247 del Código Penal de 1974, *supra*, ordena la imposición de una sentencia fija de seis (6) años permitiendo que el tribunal, en el ejercicio de su discreción y de existir circunstancias atenuantes, pueda reducirla hasta un mínimo de cuatro (4) años. No se ha demostrado que el tribunal abusara de su discreción al imponer la pena fija de seis (6) años de reclusión en presidio y al suspender la sentencia. En ausencia de tal demostración, no intervendremos con la discreción del

tribunal. *Pueblo v. Pérez Zayas*, 116 D.P.R. 197 (1985); *Pueblo v. Rivera Torres*, 121 D.P.R. 128 (1988), opinión disidente del Juez Asociado Señor Negrón García.

*Se dictará sentencia que confirme la aquí apelada.*

El Juez Asociado Señor Rebollo López disintió sin opinión escrita.