EL PUEBLO DE PUERTO RICO, apelado, *v.* TEODORO RIVERO DIODONET, acusado y apelante; EL PUEBLO DE PUERTO RICO, apelado, *v.* MARIO LUGO LÓPEZ, acusado y apelante; EL PUEBLO DE PUERTO RICO, apelado, *v.* WILFREDO ALMODÓVAR CASTRO, acusado y apelante.

*Números:* CR-87-14      *Resueltos:* 26 de mayo de 1988
            CR-87-15
            CR-87-18

456

*Ricardo E. Carrillo Delgado*, abogado del apelante Teodoro Rivero Diodonet; *Mariano Daumont Crespo, Ivette Aponte Nogueras* y *Carmen Ana Rodríguez Maldonado*, de la *Sociedad*

*para Asistencia Legal*, abogados del apelante Mario Lugo Ló-
pez; *José Luis Vázquez Plá*, abogado del apelante Wilfredo Al-
modóvar Castro; y *Rafael Ortiz Carrión, Procurador General,
Norma Cotti Cruz, Subprocuradora General, Reina Colón de
Rodríguez* y *Blanca A. Díaz Segarra, Procuradoras Generales
Auxiliares*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del
Tribunal.

Pedro Rodríguez Rodríguez, luego de ingerir un ligero
desayuno en compañía de su esposa, salió de su hogar en el
pueblo de Guánica temprano en horas de la mañana del día
16 de diciembre de 1983 en un vehículo de motor de su pro-
piedad en dirección a su lugar de empleo con la Compañía
Televideo, sita en el sector de la playa de la ciudad de Ponce.
En su trayectoria hacia su trabajo le brindó transportación a
un amigo hasta la "Tumba del Soldado" ubicada ésta frente a
una emisora de radio a la salida del pueblo de Yauco, conti-
nuando su camino solo hacia su lugar de trabajo.

El cadáver carbonizado de Pedro Rodríguez Rodríguez
fue encontrado horas más tarde ese mismo día dentro de su
automóvil quemado en un lugar conocido como el "Castillo de
Mario Mercado", jurisdicción del pueblo de Ponce. Su cuerpo
fue identificado, a base de sus pertenencias, por un hermano
suyo y de las placas dentales en poder de su dentista perso-
nal. La autopsia practicada reveló, en adición al hecho obvio
de la carbonización, que el occiso había recibido un golpe
como consecuencia del cual sufrió una fractura depresiva en
el lóbulo parietotemporal izquierdo.

El día 7 de marzo de 1984 ingresó en la Cárcel de Distrito
de Ponce, en calidad de sumariado en relación con tres (3)
supuestas infracciones al Art. 168 del Código Penal de
Puerto Rico, 33 L.P.R.A. sec. 4274, el individuo José Daniel
Mercado Montalvo. Ese mismo día, Mercado Montalvo se le
acercó a uno de los guardias penales, indicándole a éste que
interesaba conversar con la Policía en relación con "un caso".

El guardia penal inmediatamente se comunicó con un agente adscrito al Cuerpo de Investigación Criminal del Área Sur de la Policía de Puerto Rico, el cual entrevistó a Mercado Montalvo. Éste le relató al funcionario público unos hechos delictivos en relación con la muerte del occiso Pedro Rodríguez Rodríguez, en los cuales, alegadamente, él había participado en unión a otras tres (3) personas por encomienda, o "contrato por dinero", de una cuarta persona.

El Ministerio Fiscal le concedió inmunidad a José Daniel Mercado Montalvo en relación con los hechos que dieron lugar a la muerte de Pedro Rodríguez Rodríguez. Como consecuencia de la declaración bajo juramento que dicha persona prestara, se encausó criminalmente a los ciudadanos Teodoro Rivero Diodonet conocido por "Teddy", Mario Lugo López conocido por "Mayito", Wilfredo Almodóvar Castro conocido por "Quirico", y Miguel Figueroa conocido por "Miguel el Prestamista" —quien, alegadamente, fue el que pagó a los otros por la ejecución de Pedro Rodríguez Rodríguez— por los delitos de asesinato en primer grado, conspiración e infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 566 y 568.[1]

La declaración que prestara Mercado Montalvo en el juicio por jurado que contra los antes mencionados ciudadanos se celebrara ante el Tribunal Superior de Puerto Rico, Sala de Ponce —único testimonio que conecta a los referidos ciudadanos con la muerte de Pedro Rodríguez Rodríguez, el cual testimonio fuera objetado por la representación legal de éstos a base de lo resuelto por este Tribunal en *Pueblo v. Castro*, 75 D.P.R. 672 (1953)— describió, en términos generales, cómo fue invitado a participar por Mario Lugo López en dicha muerte mientras ambos se inyectaban la droga nar-

---

[1] El Ministerio Público, inexplicablemente, únicamente acusó a Wilfredo Almodóvar Castro por los delitos de conspiración e infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 566 y 568.

cótica heroína, estando presentes en dicha conversación Teodoro Rivero Diodonet y Wilfredo Almodóvar Castro. El plan que originalmente ellos concibieron —por el cual supuestamente, según manifestado por los apelantes a Mercado Montalvo, ellos recibirían una fuerte suma de dinero a ser pagada por Miguel Figueroa— consistía en dispararle de carro a carro al occiso con una pistola de nueve milímetros perteneciente a Rivero Diodonet, pero el mismo no se pudo llevar a cabo por razón del mucho tráfico existente en la carretera el día en que lo intentaron.

El 16 de diciembre de 1983, tanto el testigo Mercado Montalvo como los coacusados Lugo López, Almodóvar Castro y Rivero Diodonet, quien se encontraba armado con la pistola antes descrita, alegadamente siguieron por un largo trecho al occiso Rodríguez Rodríguez en una "guagua van" propiedad de Rivero Diodonet, desviándose luego por la "Carretera Militar" con el propósito de interceptar al occiso de frente. Así lo hicieron en las cercanías del "Castillo de Mario Mercado". Al bajarse Rodríguez Rodríguez de su automóvil, y mientras éste suplicaba que no le hicieran nada, Rivero Diodonet le propinó varios golpes con una "maceta" por el lado izquierdo de la cabeza cayendo el occiso "achocao al piso", luego de lo cual lo montaron en su carro el cual condujo Rivero Diodonet en dirección hacia el "Castillo". En dicho lugar, Lugo López regó gasolina por encima del vehículo, quemando el mismo con el cuerpo inerte de Rodríguez Rodríguez en su interior. Por dicho trabajo Mercado Montalvo recibió de manos de Lugo López la suma de $200, luego la cantidad de $180 y, posteriormente, once (11) bolsas de heroína. En adición, Miguel Figueroa alegadamente le dio, con posterioridad a la muerte de Rodríguez Rodríguez, la cantidad de $25 y le condonó una deuda de $200 que Mercado Montalvo tenía con él.

Sometido el caso por el Ministerio Fiscal, el tribunal de instancia declaró con lugar una moción de absolución peren-

toria en cuanto a Miguel Figueroa, denegándola en cuanto a los restantes coacusados. Éstos intentaron renunciar al jurado pero dicha solicitud fue denegada por el tribunal al oponerse el Ministerio Fiscal. La defensa sentó a declarar a Miguel Figueroa quien negó que hubiera pagado por matar al occiso Rodríguez Rodríguez, a quien dijo ni tan siquiera conocer. En adición, testificó Miguel Figueroa que para la fecha en que el testigo Mercado Montalvo había declarado haberlo visto, él se encontraba fuera de Puerto Rico en la República Dominicana, mostrando su pasaporte a esos efectos. Finalmente, la defensa intentó establecer mediante el testimonio de una técnica de récord de la Cárcel de Distrito de Ponce, que el testigo Mercado Montalvo había estado recluido en dicha institución penal para el 16 de diciembre de 1983, intento que resultó infructuoso por cuanto el expediente correspondiente así no lo demostraba.

El jurado rindió veredictos de culpabilidad contra los apelantes en relación con todos los delitos imputádoles. El tribunal de instancia les impuso a éstos sentencias de noventa y nueve (99) años de reclusión por el asesinato en primer grado, tres (3) años por el delito de conspiración, cinco (5) años por la infracción al Art. 8 de la Ley de Armas de Puerto Rico, ante, y un (1) año por la infracción al Art. 6 de dicha ley.

Los tres (3) convictos apelaron de dichas sentencias. Los apelantes Teodoro Rivero Diodonet y Wilfredo Almodóvar Castro le imputan al tribunal de instancia la comisión de siete (7) idénticos errores, a saber:

> *PRIMER ERROR*: Erró el Honorable Tribunal Superior de Puerto Rico, Sala de Ponce, al admitir en evidencia el testimonio del co-autor con inmunidad José Daniel Mercado Montalvo, el cual virtió ante el jurado alegadas actuaciones y manifestaciones del apelante dentro de la alegada conspiración a pesar de la objeción levantada por la defensa al amparo de lo resuelto en *Pueblo v. Castro*, 75 D.P.R. 672 (1953) y de la mani-

festación del Ministerio Público de carencia de prueba independiente para sostener su caso.

*SEGUNDO ERROR*: Erró el Honorable Tribunal Superior de Puerto Rico, Sala de Ponce, al no permitir durante el juicio la renuncia al jurado del apelante Teodoro Rivero Diodonet [y Wilfredo Almodóvar Castro]. Tal negativa no obedeció al ejercicio de la discreción del Honorable Tribunal, sino que fue el resultado de la negativa del Ministerio Público en acceder a tal solicitud, citando [é]ste para sostener su posición la Regla 111 de Procedimiento Criminal, según enmendada.

*TERCER ERROR*: Erró el Honorable Tribunal al no declarar que la Ley que enmendó la Regla 111 de Procedimiento Criminal, identificada como el Proyecto de la Cámara 699, aprobada el 9 de julio de 1986, constituye una intromisión indebida del Poder Ejecutivo representado por el Ministerio Público en una función puramente judicial como es la discreción de un magistrado en aceptar o no la renuncia al jurado de un acusado una vez comenzado el juicio. Dicha acción constituye una violación a los derechos del acusado como lo es el derecho a un juicio justo e imparcial, y el debido procedimiento de ley.

*CUARTO ERROR*: Erró el Honorable Tribunal Superior de Puerto Rico, Sala de Ponce, al s[ó]lo absolver perentoriamente a Miguel Figueroa Berenguer y no así a Teodoro Rivero Diodonet, [y a Wilfredo Almodóvar Castro], no existiendo prueba suficiente en derecho para sostener los cargos y declarar sin lugar la solicitud de absolución perentoria.

*QUINTO ERROR*: Erró el Honorable Tribunal Superior de Puerto Rico, Sala de Ponce, al sostener los veredictos de culpabilidad rendidos por el jurado cuando la prueba presentada fue de naturaleza flaca, descarnada, inverosímil, contradictoria; razón por la cual se cometió error manifiesto en la [*sic*] apreciación de la prueba.

*SEXTO ERROR*: Erró el Honorable Tribunal Superior de Puerto Rico, Sala de Ponce, al declarar sin lugar la Moción al Amparo de la Regla 187 de Procedimiento Criminal, fechada el 12 de noviembre de 1986; en la cual se establec[í]a que los veredictos rendidos fueron contrarios a la prueba presentada.

*S[É]PTIMO ERROR*: Erró el Honorable Tribunal Superior de Puerto Rico, Sala de Ponce, al declarar sin lugar la

Segunda Moción de Nuevo Juicio presentada por el acusado Teodoro Rivero Diodonet [y la de Wilfredo Almodóvar Castro] al amparo de la Regla 188 de Procedimiento Criminal, incisos A y F; habiendo tenido el Honorable Tribunal el beneficio de escuchar a la Oficial Socio-Penal Wanda Saliva y al propio alegado co-autor con inmunidad Jos[é] Daniel Mercado Montalvo indicar que existía nueva prueba y declarar Mercado Montalvo que había sido engañado y obligado a declarar[.] Consistía la prueba presentada de suficiente valor para ordenar un nuevo juicio. Alegato del apelante, págs. 2–3.

Por su parte, el apelante Mario Lugo López le imputa al foro de instancia la supuesta comisión de cuatro (4) errores.[2] Estos son:

A. Cometió error el juzgador de los hechos (jurado) así como el Honorable Juez en la apreciación de la prueba.

B. Erró el Honorable Tribunal al permitir la utilización de testigos de defensa por el Ministerio Público, Código de Enjuiciamiento Criminal, 34 L.P.R.A. Sección 11.

C. Que la prueba de cargo era insuficiente para sostener la acusación por los delitos imputados.

D. Cometió error el Tribunal al permitir como testigo de cargo al señor José D. Mercado Montalvo, co-autor de los supuestos hechos sin que el Ministerio Público tuviera prueba adicional o independiente para probar su caso y sin que existiera prueba de corroboración alguna, excepto el testimonio del antes mencionado testigo.

E. Erró el Tribunal de Instancia al exonerar a mediados del proceso al co-imputado, Miguel Figueroa Berenguer, supuesto "autor intelectual" del delito imputado, decisión que motivó que el jurado sólo pudiese tener presente a los co-imputados Wilfredo Almodóvar, Mario Lugo López y Teodoro Rivera Diodonet. Escrito de Apelación, págs. 1–4.

_____

[2] Los señalamientos (C), (D) y (E) del apelante Lugo López son similares a los señalamientos quinto, primero y cuarto, *respectivamente*, de los apelantes Rivero Diodonet y Almodóvar Castro.

Consideramos, y disponemos, de los tres (3) recursos de apelación conjuntamente.

## I

Los tres (3) apelantes señalan que el tribunal de instancia cometió grave error de derecho, el cual alegadamente amerita y conlleva la revocación de las sentencias apeladas, al admitir en evidencia la declaración del testigo con inmunidad Mercado Montalvo. Argumentan que siendo éste un coconspirador, le aplica a esta situación lo expresado por este Tribunal en *Pueblo v. Castro*, ante, a los efectos de que las "actuaciones y las manifestaciones extrajudiciales de coconspiradores —o de coacusados que cometen un delito con un designio común— son admisibles en evidencia contra los otros acusados, siempre y cuando que (1) de los autos surja alguna evidencia independiente que conecte a éstos con la conspiración o el designio común, y (2) las actuaciones y las manifestaciones de los coconspiradores hayan ocurrido durante el curso y en ayuda de la conspiración". Enfatizan, por último, el hecho de que durante el proceso celebrado ante el foro de instancia, el Ministerio Público aceptó que no contaba con prueba independiente que conectara a los acusados con la conspiración imputada.

 ᐧ Como es sabido, lo que este Tribunal hizo en el año de 1953 al resolver el caso de *Pueblo v. Castro*, ante, fue "reglamentar" la admisibilidad de *prueba de referencia* en un juicio criminal contra un coconspirador, estableciendo, como hemos visto, que dicha prueba solamente era admisible si se daban los dos (2) requisitos a que allí se hace referencia. Dicha norma fue plasmada en la Regla 62(E) de Evidencia para el Tribunal General de Justicia de 1979 (32 L.P.R.A. Ap. IV). La misma, en lo pertinente, dispone que:

Es admisible como excepción a la regla de prueba de referencia una declaración ofrecida contra una parte si la declaración:

. . . . . . . .

(E) es hecha por un coconspirador de dicha parte durante el curso de la conspiración y en la consecución del objetivo de ésta.

Sobre dicha disposición nos ilustra el Profesor Ernesto L. Chiesa:

Se trata de otro tipo de admisión vicaria. Aquí no basta que la declaración sea hecha durante el curso de la conspiración; se exige, además, que sea hecha en la consecución del ojetivo de la conspiración, *"in furtherance of the conspiracy"*. Se trata de una regla más restrictiva que la relativa a agencia o empleo. De ahí que, como se expresara en *United States v. Pheaster*, 544 F.2d 353 (1976), *certiorari denied* 429 U.S. 1099, son tres los requisitos para la admisibilidad bajo este inciso: (i) que la declaración fue hecha durante la vigencia de la conspiración, [(ii) que la declaración fue hecha en la consecución del objetivo de la conspiración], y (iii) que haya prueba independiente de la conspiración y de la conexión del declarante y del acusado con dicha conspiración. Estos requisitos deben establecerse, de ordinario, como determinaciones preliminares bajo la regla 9. Pero ello está sujeto a la discreción del tribunal para alterar el orden de la prueba. Véase *United States v. Williams*, 529 F.2d 557 (1976). El tercer requisito puede establecerse mediante preponderancia de la evidencia.

Nuestra jurisprudencia está de acuerdo con esta norma. En *Pueblo v. Sierra*, 42 D.P.R. 504 (1931), se habla en términos de que las declaraciones son admisibles *especialmente si se hacen antes de consumarse la conspiración* (p. 506). Luego, en *Pueblo v. Colón*, 52 D.P.R. 413 (1937), se resolvió que son inadmisibles las manifestaciones hechas después de efectuado el móvil de la conspiración, es decir, después de terminada la conspiración, independientemente del motivo que se tuvo al hacerlas. Esto está en armonía con la norma de este inciso. El caso principal es el de *Pueblo v. Castro*, 75 D.P.R. 672 (1953).[3]

---

[3] E.L. Chiesa, *Práctica Procesal Puertorriqueña, Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, Cap. VIII, págs. 302–303.

El obstáculo con que se confronta el argumento elaborado por los apelantes en cuanto a este aspecto del caso es que, en lo concerniente a la declaración del testigo Mercado Montalvo respecto a ellos tres (3) en específico, *no estamos ante un problema de prueba de referencia. Llana y sencillamente se trata de un testigo que declara sobre lo que a él le consta de propio y personal conocimiento; esto es, lo que él vio y escuchó hacer y decir a los apelantes; testimonio que estuvo sujeto a contrainterrogatorio. Pueblo v. Arreche Holdun*, 114 D.P.R. 99 (1983).

■ La confusión de los apelantes es hasta cierto punto entendible. Como expresáramos en *Pueblo v. Rivera Burgos*, 106 D.P.R. 528, 530–531 (1977):

> Con alguna frecuencia en nuestros tribunales de instancia abogados, fiscales y jueces se inclinan a considerar que todo lo que un testigo exprese que alguien le haya dicho es prueba de referencia. Basta que el testigo diga "Fulano me dijo . . . ." para que se produzca de inmediato una objeción, y enseguida el pronunciamiento del juez: "Con lugar." No siempre es prueba de referencia lo manifestado por un tercero al testigo, o lo que el testigo oyó que un tercero dijo. Para que lo manifestado sea prueba de referencia, y por tanto inadmisible a menos que caiga bajo alguna excepción, la manifestación debe tener algún contenido que pueda ser cierto o falso, *y que dicha manifestación, al ser trasmitida al tribunal por el testigo que la oyó, se produzca para probar que lo manifestado es cierto.*
> (Énfasis suplido.)

■ Debe mantenerse presente que —según lo define la Regla 60(C) de Evidencia, 32 L.P.R.A. Ap. IV— únicamente constituye prueba de referencia aquella "declaración aparte de la que hace el declarante al testificar en el juicio o vista, *que se ofrece en evidencia para probar la verdad de lo aseverado*". (Énfasis suplido.) En el caso ante nuestra consideración constituiría, al amparo de la norma vigente en nuestra jurisdicción, prueba de referencia toda aquella manifes-

tación que le hicieron los aquí apelantes al testigo Mercado Montalvo sobre el hecho de que el coacusado Miguel Figueroa —quien fue exonerado por el foro de instancia— alegadamente había pagado una suma de dinero a todos ellos por matar al occiso Rodríguez Rodríguez. Recordemos que el Estado admitió el hecho de que no contaba con prueba independiente que demostrara la existencia de la conspiración ni la conexión de Figueroa con la misma, no pudiendo utilizarse las manifestaciones objetadas a esos efectos para establecer dichos hechos.[4]

Por el contrario, no constituye prueba de referencia el testimonio de Mercado Montalvo sobre lo que él les escuchó decir a los apelantes y lo que les vio hacer respecto a la planificación y ejecución de los hechos delictivos que le fueron imputados a éstos por el Estado. Esto es, respecto a este testimonio no es de aplicación ni lo resuelto por este Tribunal en *Pueblo v. Castro*, ante, ni las disposiciones de la citada Regla 62(E) de Evidencia por cuanto, repetimos, dicho testimonio no constituye prueba de referencia.

Al testimonio de Mercado Montalvo, sin embargo, sí le eran aplicables las disposiciones de la Regla 156 de Proce-

---

[4] Esa fue la norma imperante en la jurisdicción federal, al amparo de la Regla 801(d)(2)(E) de Evidencia federal, 28 U.S.C., hasta que el Tribunal Supremo de los Estados Unidos resolvió el caso de *Bourjaily v. United States*, 55 L.W. 4962 (1987). En dicho caso el referido Tribunal —revocando la norma establecida en los casos de *Glasser v. United States*, 315 U.S. 60 (1942) y *United States v. Nixon*, 418 U.S. 683 (1974)— resolvió que los tribunales federales, en la determinación de si las manifestaciones de un coconspirador que implica a otro son o no admisibles en evidencia, pueden tomar en consideración las referidas manifestaciones a los fines de determinar la existencia misma de la conspiración, facultad que le estaba vedada bajo los casos de *Glasser v. United States*, ante, y *United States v. Nixon*, ante, los cuales exigían que la existencia de la conspiración fuera demostrada por prueba independiente a las manifestaciones.

Naturalmente, no venimos obligados a seguir dicha doctrina. *Pueblo v. Dolce*, 105 D.P.R. 422, 428 (1976). Ello, sin embargo, es un asunto que en el momento que se nos plantee será decidido. El mismo no está ante nuestra consideración en el presente caso.

dimiento Criminal, 34 L.P.R.A. Ap. II, según enmendada, a los efectos de que el "testimonio de un coautor, será examinado con desconfianza y se le dará el peso que estime el juez o el jurado luego de examinarlo con cautela a la luz de toda la evidencia presentada en el caso. En los casos celebrados por jurado se le ofrecerán al jurado instrucciones a esos efectos".

El tribunal de instancia en el presente caso cumplió, respecto a la instrucción requerida, con dicha obligación. Resulta evidente, en su consecuencia, que no se cometió en el presente caso el error señalado. La declaración prestada por el testigo Mercado Montalvo fue correctamente admitida en evidencia en lo referente a los aquí apelantes.

## II

Mediante los señalamientos segundo y tercero, los apelantes Rivera Diodonet y Almodóvar Castro alegan que el tribunal de instancia cometió error al negarse, una vez había comenzado el proceso, a aceptarles su renuncia al jurado. Sostienen, en adición, que la Ley Núm. 86 de 9 de julio de 1986 —la cual enmendó la Regla 111 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, a los efectos de requerir la anuencia del Ministerio Público para que el acusado pueda renunciar al jurado una vez comenzado el proceso— es inconstitucional por razón de que viola "el derecho a un juicio justo e imparcial y del debido procedimiento de ley". Alegato del apelante, pág. 2. El error no fue cometido.

■ Luego de la enmienda efectuada por la referida Ley Núm. 86, la citada Regla 111 de Procedimiento Criminal dispone, en lo pertinente, que:

Si la renuncia al jurado se produce *una vez comenzado el juicio*, es *discrecional del juez* que preside el juicio el acceder a

que el mismo continúe por tribunal de derecho *con el consentimiento del Ministerio Público*. (Énfasis suplido.)[5]

Al aprobar la mencionada Ley Núm. 86, lo que el legislador hasta cierto punto hizo fue "resumir" y plasmar por escrito, incorporándola a la citada Regla 111 de Procedimiento Criminal, la jurisprudencia en general de este Tribunal sobre la materia con la única diferencia de exigir, como requisito, el consentimiento del Ministerio Público.

En *Pueblo v. Rivera Suárez*, 94 D.P.R. 510, 515 (1967), expresamos:

La práctica prevaleciente en esta jurisdicción . . . en virtud de lo dispuesto en la Regla 111 de las de Procedimiento Criminal, no obliga a un acusado a que su caso se vea por jurado. Distinto a la tradición imperante en los Estados Unidos, hemos visto que en nuestro medio el juicio por jurado, si bien actualmente es un derecho garantizado constitucionalmente, no es un ingrediente esencial en nuestro procedimiento. Siempre se ha reconocido el derecho del acusado a renunciarlo.

Ahora bien, esa renuncia debe hacerla el acusado antes de comenzar el juicio. En ese momento es un derecho que el acusado tiene y al ejercitarlo debe ser sostenido por el tribunal. Pero la situación es distinta cuando luego de optar porque el caso se vea ante jurado y comenzado el mismo cambie de parecer y opte por renunciar a ello. En ese caso ya se ha movido la maquinaria de la justicia de acuerdo con lo pedido por el acusado, y es discreción de la corte concederlo o no. *Pueblo v. Hernández*, 55 D.P.R. 954 (1940). . . .

Por otro lado, en *Pueblo v. Guzmán Vélez*, 100 D.P.R. 198, 203 (1971) afirmamos:

No perdamos de vista que el derecho que garantiza nuestra Constitución es el de juicio por jurado, no el de la renuncia al

---

[5] La Regla 23(a) de Procedimiento Criminal federal, 18 U.S.C., dispone:
"Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the Court *and the consent of the government*." (Énfasis suplido.)

jurado, y aunque taxativamente la Constitución no expresa este último derecho es claro que la Convención Constituyente quiso que pudiera ejercerse. Tal intención no significa que el acusado tenga derecho a insistir en un juicio por tribunal de derecho una vez haya ejercido el derecho a que se ventile por jurado y que, como cuestión de hecho el juicio haya comenzado. Reiteramos que siendo el juicio por jurado un derecho con rango constitucional, no constituye violación del mismo el que el juzgador en el uso de su sana discreción se niegue a aceptar la renuncia a ese derecho luego de comenzada la vista del caso y la presentación de la prueba. Tal actuación del juez de instancia no viola el debido procedimiento de ley. Por el contrario, su negativa conlleva el disfrute del derecho que precisamente le garantiza la Constitución.

■ Por último, en *Pueblo v. Borrero Robles*, 113 D.P.R. 387, 393–394 (1982), al ratificar lo afirmado en *Pueblo v. Rivera Suárez*, ante, y *Pueblo v. Guzmán Vélez*, ante, *específicamente resolvimos que no existe un derecho constitucional a renunciar al jurado*. Resulta, en adición, significativo el hecho de que en dicho caso, al enumerar algunos de los factores que el juez que preside el proceso debía tomar en consideración para conceder o denegar la solicitud de renuncia, incluimos el de "las contenciones del Ministerio Público sobre el particular . . .". Esto es, aun con anterioridad a la aprobación de la citada Ley Núm. 86 los tribunales de instancia, al ejercer su discreción en relación con esta materia, venían en la obligación de tomar en consideración la posición del Ministerio Fiscal al respecto.. Lo que la referida Ley Núm. 86 hizo fue exigirlo como requisito.

■ Somos del criterio, y así lo resolvemos, que desde el punto de vista constitucional no existe impedimento alguno para que el legislador reglamente la materia de la renuncia al derecho a juicio por jurado —determinando que la misma esté sujeta a la sana discreción del tribunal y/o exigiendo que el Ministerio Público dé su anuencia— *por razón de que no existe un derecho constitucional a renunciar al derecho a*

*juicio por jurado. Singer v. United States*, 380 U.S. 24 (1965); *3 Wharton's Criminal Procedure* Sec. 436, págs. 209–215 (1975); *2 Wright Federal Practice and Procedure: Criminal 2d* Sec. 372, págs. 297–304 (1982).

Ello no obstante, en un caso en particular concebiblemente pudieran darse unas circunstancias en que la negativa del tribunal de instancia a acceder a la renuncia al jurado —*fundada o no en la negativa del Ministerio Público*— pudiera entrañar la violación del derecho a un juicio justo e imparcial garantizado por el Art. II, Sec. 11, de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, y por la Sexta Enmienda de la Constitución de Estados Unidos, L.P.R.A., Tomo 1. *Singer v. United States*, ante, págs. 34–35; *Pueblo v. Borrero Robles*, ante, pág. 393. *De ello ser así, es de la responsabilidad de cada apelante el demostrarlo ante el tribunal apelativo.* Los aquí apelantes no han cumplido con dicha obligación en el presente caso.

### III

Los apelantes sostienen que procede la revocación de las sentencias apeladas por razón de que el juzgador de los hechos cometió error al apreciar la prueba presentada y declararlos culpables, ya que dicha prueba era una "flaca y descarnada", repleta de contradicciones, y, por lo tanto, indigna de crédito. Atacan, en específico, la declaración prestada por el testigo Mercado Montalvo, único testimonio que los conecta con el asesinato de Pedro Rodríguez Rodríguez.

Respecto a la clase de prueba que se requiere para obtener y sostener una convicción en nuestra jurisdicción, al efecto o consecuencia que tiene la determinación que sobre dicha prueba hace el juzgador de los hechos a nivel de instancia, y a la función revisora de este Tribunal referente a dicha determinación o apreciación, expresamos en *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 652–655 (1986) que:

. . . es principio fundamental de nuestro sistema de derecho que la culpabilidad de un imputado de delito *debe ser probada mas allá de duda razonable*. *Pueblo* v. *Ortiz Morales*, 86 D.P.R. 456 (1962); *Pueblo* v. *Carrasquillo Carrasquillo*, 102 D.P.R. 545 (1974). *El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea "suficiente", esto es, que "verse" sobre todos los elementos del delito imputado; se le requiere que la misma sea "suficiente en derecho"*. Ello significa que la evidencia presentada, "además de suficiente, *tiene que ser satisfactoria*, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación" o en un ánimo no prevenido. (Énfasis suplido.) *Pueblo* v. *Carrasquillo Carrasquillo*, ante, pág. 552. Esa "insatisfacción" con la prueba es lo que se conoce como "duda razonable y fundada". *Pueblo* v. *Toro Rosas*, 89 D.P.R. 169 (1963).

.      .      .      .      .      .      .      .

Como es sabido, la apreciación que hace un juzgador de la evidencia desfilada durante un proceso judicial criminal es una cuestión mixta de hecho y de derecho. Es así por cuanto el análisis que de la prueba presentada se realiza "pone en movimiento, además de la experiencia del juzgador, su conocimiento del Derecho para así llegar a una solución justa de la controversia". *Pueblo* v. *Carrasquillo Carrasquillo*, ante, pág. 552.

Es por ello que la determinación que ha hecho el juzgador de los hechos a nivel de instancia a los efectos de que la culpabilidad del imputado de delito ha quedado establecida más allá de duda razonable es una que es revisable en apelación como "cuestión de derecho". *Pueblo* v. *Serrano Nieves*, 93 D.P.R. 56 (1966); *Pueblo* v. *Pagán Díaz*, 111 D.P.R. 608 (1981).

Es norma jurisprudencial trillada que esa "determinación de culpabilidad" que hace el juzgador de los hechos a nivel de instancia es merecedora de gran deferencia por parte del tribunal apelativo. El fundamento o base en que se apoya la referida norma es obvio: dicho juzgador es el que, de ordinario, está en mejor posición para aquilatar la prueba testifical ya que fue el que oyó y vio declarar a los testigos. Como expresáramos en *Ortiz* v. *Cruz Pabón*, 103 D.P.R. 939, 947 (1975):

". . . y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el

temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, *todos estos elementos se pierden en la letra muda de las actas*, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; *le faltará el instrumento más útil para la investigación de la verdad: la observación* . . . ." (Énfasis suplido.)

Es por ello que este Tribunal ha expresado en reiteradas ocasiones que, de ordinario, no intervendremos con el veredicto condenatorio emitido por un jurado o el fallo inculpatorio de un magistrado en "ausencia de pasión, prejuicio o error manifiesto" en la apreciación que de la prueba realizaron los mismos. *Pueblo* v. *Millán Meléndez*, 110 D.P.R. 171 (1980); *Pueblo* v. *López Pérez*, 106 D.P.R. 584 (1977); *Pueblo* v. *Borrero Robles*, 113 D.P.R. 387 (1982). Debe quedar claro, en adición, que la responsabilidad de demostrar que procede la intervención con el fallo o veredicto condenatorio emitido a nivel de instancia recae, de manera principal, sobre el apelante.

Todo lo anteriormente expresado, sin embargo, no significa que esa determinación de culpabilidad realizada por el juzgador de los hechos constituye una barrera insalvable. En el pasado, en ocasiones en que un análisis ponderado de la prueba desfilada ante el foro de instancia nos ha producido duda razonable y fundada sobre si la culpabilidad del apelante ha quedado establecida más allá de duda razonable, no hemos vacilado en dejar sin efecto un fallo condenatorio. *Pueblo* v. *Carrasquillo Carrasquillo*, ante; *Pueblo* v. *Pagán Díaz*, ante; *Pueblo* v. *Meléndez Rolón*, 100 D.P.R. 734 (1972); *Pueblo* v. *Falú Fuentes*, 102 D.P.R. 809 (1974); *Pueblo* v. *Sanabria Pérez*, 113 D.P.R. 694 (1983); *Pueblo* v. *Álamo Álamo*, 116 D.P.R. 673 (1985). Y es que, como expresáramos en *Pueblo* v. *Carrasquillo Carrasquillo*, ante, págs. 551–552, hasta tanto "se disponga de un método infalible para averiguar sin lugar a dudas dónde está la verdad, su determinación tendrá que ser una cuestión de conciencia. Ese deber de conciencia no para en el fallo del tribunal sentenciador. *Nosotros también tenemos de-*

*recho a tenerla tranquila"*. (Escolio omitido, énfasis suplido y en el original.)

Hemos examinado con detenimiento el testimonio prestado por el testigo con inmunidad Mercado Montalvo, según éste surge de la exposición narrativa de la prueba certificada como correcta por el tribunal de instancia. El mismo definitivamente no es uno que se pueda catalogar de "flaco y descarnado". Véase *Pueblo v. Ayala Ruiz*, 93 D.P.R. 704 (1966). En adición, el referido testimonio establece plenamente todos los elementos de los delitos imputados. Por otro lado, no hay duda que dicho testimonio adolece de ciertas contradicciones al ser comparado el mismo intrínsecamente con el de otros testigos de cargo. Dichas contradicciones, sin embargo, no son de tal naturaleza que causen "en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal" que se estremezca nuestro sentido básico de justicia. *Pueblo v. Cabán Torres*, ante, pág. 657. No encontramos base suficiente en el récord para intervenir con la apreciación y adjudicación de credibilidad que de la prueba presentada hizo el juzgador de los hechos a nivel de instancia. En otras palabras, la prueba presentada por el Ministerio Público en el presente caso no sólo establece todos los elementos de los delitos imputados sino que la misma es satisfactoria y "suficiente en derecho". *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545, 552 (1974); *Pueblo v. Cabán Torres*, ante.

## IV

Alegan los apelantes que erró el tribunal de instancia al únicamente absolver perentoriamente al coacusado Miguel Figueroa. Señalan que la teoría del Ministerio Fiscal fue a los efectos de que ellos tres (3), en unión al testigo Mercado Montalvo, asesinaron a Pedro Rodríguez Rodríguez siguiendo instrucciones de Miguel Figueroa, quien les pagaría dinero por ello. Argumentan que bajo dicha teoría, si resul-

taba procedente la absolución del "autor intelectual" de los hechos, igualmente procedía la absolución perentoria de ellos. El señalamiento de error es evidentemente inmeritorio.

Como es sabido, la Regla 135 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece, en lo pertinente, que:

El Tribunal a instancia propia o a instancia de un acusado decretará su absolución perentoria en uno o varios cargos de la acusación o denuncia luego de practicada la prueba de una o de ambas partes *si la misma fuere insuficiente para sostener una convicción por ese cargo o cargos.* (Énfasis suplido.)

Aparte del hecho de que si el foro de instancia actuó o no correctamente al absolver perentoriamente al coacusado Miguel Figueroa, lo que es una cuestión que no está ante nuestra consideración y que la misma es una que no es de la incumbencia de los apelantes, hemos resuelto que un tribunal de instancia no comete error al declarar sin lugar una moción de absolución perentoria presentada por un acusado cuando existe una *scintilla* de evidencia en apoyo de la acusación radicada; esto es, cuando el Estado ha presentado un caso prima facie contra el acusado. *Pueblo v. Rosado*, 72 D.P.R. 827 (1951); *Pueblo v. Portalatín*, 73 D.P.R. 334 (1952); *Pueblo v. Castañón Pérez*, 114 D.P.R. 532 (1983).

Resulta obvio que en el presente caso el Estado cumplió con esa obligación, cuando menos, en relación con los aquí apelantes. De hecho, la prueba presentada, como hemos expresado, es suficiente para establecer la culpabilidad de ellos más allá de duda razonable.

## V

El apelante Lugo López se queja de que el Ministerio Público utilizó como testigos de cargo durante el juicio celebrado a unas personas que él había anunciado como testigos de defensa. Independientemente de la corrección jurí-

dica de su planteamiento, lo cual es cuestionable, véase *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653 (1985), *lo cierto es que el referido apelante no objetó a nivel de instancia la utilización de dichos testigos por el fiscal al éste llamarlos a declarar*. Esto es, la prueba aportada por ellos no fue oportunamente objetada. Siendo ello así, el apelante Lugo López está impedido de levantar el punto de la inadmisibilidad de dicha evidencia por primera vez en apelación. Véanse: *Pueblo v. Jiménez*, 78 D.P.R. 7 (1955); *Pueblo v. Torres*, 81 D.P.R. 678 (1960). Por otro lado, un examen del testimonio prestado por dichos testigos no demuestra que el mismo sea tan perjudicial como para justificar la consideración de dicha objeción por primera vez a nivel apelativo. *Pueblo v. Oquendo*, 83 D.P.R. 234, 241–242 (1961). De hecho, se puede afirmar que el testimonio de dichos testigos apenas perjudica a los apelantes.

## VI

Por último, los apelantes Rivero Diodonet y Almodóvar Castro argumentan —mediante sus señalamientos sexto y séptimo— que el tribunal de instancia cometió error al denegar dos (2) mociones de nuevo juicio que ellos radicaron. Dicho argumento está predicado, principalmente, en un informe presentencia de una oficial sociopenal, el cual fuera preparado en relación con los aquí apelantes. Surge de dicho informe que el testigo Mercado Montalvo le expresó a dicha funcionaria que él fue "presionado" por agentes del orden público respecto a la declaración que él prestara en el caso, y que el referido testigo "podría" tener una versión distinta favorable a los apelantes.

Como es sabido, hemos resuelto que para que una moción de esta índole proceda resulta necesario que la nueva prueba: (1) no se haya podido descubrir con razonable diligencia antes del juicio; (2) no sea meramente de carácter

acumulativo; (3) no impugne la prueba aducida durante el juicio; (4) la misma sea creíble, y (5) *probablemente produciría un resultado distinto. Pueblo v. Morales*, 66 D.P.R. 10 (1946); *Pueblo v. Ortiz,* 68 D.P.R. 681 (1948); *Pueblo v. Beltrán*, 73 D.P.R. 509 (1952).

Como bien señala el Procurador General de Puerto Rico en su alegato, pág. 31, los apelantes no indican en qué específicamente consistiría la nueva prueba; esto es, sí se indica que el testigo Mercado Montalvo podría dar otra versión que, a su vez, podría ser "favorable" a los apelantes, pero no se especifica en qué consistiría la nueva versión.

Bajo estas circunstancias, no erró el tribunal de instancia, en el ejercicio de su discreción, al declarar sin lugar las mociones de nuevo juicio. *Pueblo v. Rodríguez Vallejo*, 100 D.P.R. 426 (1972). Resulta imposible el poder precisar si la "nueva" prueba "probablemente produciría un resultado distinto". Veáse *Pueblo v. Beltrán,* ante.

Por las razones antes expresadas, *procede decretar la confirmación de las sentencias apeladas. Se dictará sentencia de conformidad.*

