# 2003 DTA 81

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I, PANEL IV DE SAN JUAN

GLORIA CALZADA, ETC.
Demandantes-Apelados

v.

HOSPITAL SAN JUAN CAPESTRANO, ETC.
Demandados-Apelantes

Núm. KLAN-01-00810

-------------------------------------------

GLORIA CALZADA, ETC.
Demandantes-Apelados

v.

HOSPITAL SAN JUAN CAPESTRANO, ETC.
Demandados-Apelantes

Núm. KLAN-01-00811

San Juan, Puerto Rico, a 30 de abril de 2003

Panel integrado por su Presidente, el Juez Gierbolini,
el Juez Cordero y el Juez Rodríguez Muñiz

**TEXTO COMPLETO DE LA SENTENCIA**

El 20 de agosto de 2001, el Hospital San Juan Capestrano y el Dr. Angelo Coppola Muñoz, presentaron sendos Recursos de Apelación en el que nos solicitaron la revocación de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 30 de mayo de 2001 y notificada el 25 de julio de 2001. Mediante dicha sentencia, el tribunal *a quo* declaró con lugar una demanda en daños y perjuicios presentada contra el Hospital San Juan Capestrano y el Dr. Coppola por impericia médica.

Por los fundamentos que expondremos a continuación, **MODIFICAMOS** la Sentencia apelada y así modificada, **CONFIRMAMOS** la misma.

**I**

Gloria Calzada Quiñones (en adelante Calzada) tiene más de 68 años y es una paciente de diabetes mellitus desde hace más de 18 años. El 3 de julio de 1991, Calzada sufrió una lesión en el talón del pie izquierdo debido a una piedra incrustada en un zapato. El 7 de julio de 1991, el hijo de Calzada, Igor Revilla Calzada (en

adelante Revilla), la llevó a la sala de emergencia del San Juan Health Centre para tratamiento de la lesión del pie, donde realizaron varias pruebas de laboratorio, las cuales reflejaron que Calzada tenía una glucosa elevada, un conteo de 11,300 células blancas y anemia de 9.6 mg de hemoglobina. El doctor Ramírez evaluó a Calzada en el San Juan Health Centre y la transfirió al Ashford Presbyterian Community Hospital (en adelante el Hospital Ashford) con un diagnóstico de absceso y celulitis del pie izquierdo con diabetes mellitus no controlada.

El 7 de julio de 1991, Calzada fue admitida al Hospital Ashford en donde la examinaron, realizaron nuevas pruebas de laboratorio y le administraron el antibiótico Nafcillin por vía intravenosa durante los días que estuvo hospitalizada. El 10 de julio de 1991, Calzada fue dada de alta del Hospital Ashford por complicaciones de índole psiquiátrica y fue puesta en terapia de antibiótico Unipen 500 por vía oral cada 6 horas. El 10 de julio de 1991, Calzada fue internada en el Hospital Psiquiátrico San Juan Capestrano debido a su condición mental, donde diagnosticaron esquizofrenia paranoide crónica y una eritema y edema con pequeña herida no sangrante en el pie izquierdo.

El 11 de julio de 1991, el Dr. Angelo Coppola Muñoz evaluó a Calzada por primera vez; notó la celulitis del pie izquierdo y recomendó continuar con el antibiótico Unipen. El 13 de julio de 1991, el doctor Madrid firmó una nota de guardia en la que describió el área de la celulitis como edematoso, caliente, hiperémico y con una glucosa en la sangre de 250 mg. Las notas de enfermería del 15 de julio de 1991, indican que la paciente continuaba con los pies afectados, cojeaba, manifestaba tener mucho dolor y pasaba la mayor parte del tiempo acostada con la pierna izquierda elevada, debido a que estaba edematosa, caliente y drenando con poca cantidad de secreciones. La nota del doctor Coppola del 15 de julio de 1991, describe que la paciente no tenía fiebre y que un material purulento salía de la lesión del pie. Una nota de enfermería del 17 de julio de 1991 indica que Calzada expresó sentirse mareada y sufrió una caída. El 19 de julio de 1991, el doctor Coppola anotó que la paciente todavía sufría de dolor, que los bordes de la lesión estaban eritematosos y cambió el medicamento a Cipro.

El 20 de julio de 1991, Calzada y su hijo solicitaron autorización para irse del Hospital y consultar al doctor Ramírez. El 22 de julio de 1991, el doctor Coppola anotó que la paciente estaba afebril, que la lesión todavía tenía un área de ulceración, un hueco sin drenaje y aunque el área de celulitis estaba mejorando, tenía la sospecha de un posible absceso profundo o fístula del hueso y recomendó referir a Calzada a un hospital general. El 22 de julio de 1991, Calzada fue llevada al San Juan Health Centre, quienes la refirieron al Hospital Ashford donde trataron la lesión. El 24 de julio de 1991, el Dr. López Ruiz removió tejido necrótico del talón izquierdo y el 2 de agosto de 1991, realizó un injerto de piel del muslo al pie. Calzada estuvo recluida en el Hospital Ashford hasta el 7 de agosto de 1991.

El 9 de julio de 1992, Calzada y su hijo, Revilla, presentaron Demanda en daños y perjuicios contra el Hospital San Juan Capestrano, el Dr. Angelo Coppola Muñoz, la Sociedad Legal de Gananciales compuesta por el doctor Coppola y su esposa, y la Asociación Médica de Puerto Rico, por mala práctica de la medicina. Los demandantes alegaron que por culpa o negligencia del Hospital San Juan Capestrano y del doctor Coppola, Calzada desarrolló una infección en su pie izquierdo que requirió de cirugía, además de ocasionarle graves daños físicos y emocionales. Calzada reclamó una cantidad no menor de $400,000.00 por daños y angustias mentales, mientras que Revilla reclamó $40,000.00 por sus daños y angustias mentales. Además de $800.00 por gastos médicos y el pago de costas y honorarios de abogado.

El 5 de mayo de 1993, el Hospital San Juan Capestrano presentó contestación a la demanda en la que negó toda alegación de negligencia en su contra y alegó que cumplió con todas las normas legales exigibles por la profesión médico-hospitalaria. El 15 de diciembre de 1993, el doctor Coppola presentó su contestación a la demanda en la que también negó toda alegación de negligencia y adujo que el tratamiento brindado cumplió con las exigencias reconocidas por la profesión médica.

El 30 de mayo de 2001, el Tribunal de Primera Instancia emitió sentencia, notificada el 25 de junio de 2001, mediante la cual declaró con lugar la demanda y condenó a los demandados a pagar solidariamente $75,000.00 a Calzada y $20,000.00 a Revilla en concepto de daños, más $5,000.00 de honorarios de abogado por temeridad y la imposición de costas e intereses legales desde la fecha de presentación de la demanda.

El 3 de julio de 2001, el Hospital San Juan Capestrano presentó moción en solicitud de determinaciones de hechos y conclusiones de derecho adicionales y el 5 de julio de 2001, el doctor Coppola presentó solicitud de determinaciones de hechos probadas adicionales. Ambas solicitudes fueron declaradas no ha lugar mediante orden emitida por el Tribunal de Primera Instancia el 16 de julio de 2001 y notificada el 20 de julio de 2001. Inconformes con dicha determinación, el Hospital San Juan Capestrano y el doctor Coppola acudieron ante nos mediante recursos de apelación en el que nos solicitaron la revocación de la sentencia emitida por el Tribunal de Primera Instancia a quien imputa la comisión de los siguientes errores:

*"1. Erró el tribunal apelado al permitir el testimonio del nuevo perito de la parte demandante en la vista en su fondo, a pesar de no haber sido depuesto por el apelante.*

*2. Erró el tribunal apelado al no enmendar, corregir y añadir determinaciones de hechos adicionales, según probados y solicitados.*

*3. Erró el tribunal apelado en la apreciación de la prueba presentada.*

*4. Erró el tribunal apelado en los daños concedidos.*

*5. Erró el tribunal apelado al imponer honorarios de abogado e intereses legales por temeridad."*

## II

En cuanto al primer señalamiento de error, este Tribunal ya expresó su posición al respecto mediante la Resolución emitida y notificada el 14 de abril de 1999, por el Panel IV de San Juan, compuesto entonces por los Jueces Rossy García, González Rivera y Ortiz Carrión, en el caso número KLCE-99-00161, cuando los demandados recurrieron ante este Tribunal en solicitud de revisión de la orden emitida por el Tribunal de Primera Instancia el 19 de enero de 1999 y notificada el 1 de febrero de 1999, mediante la cual permitió el nuevo perito.

Como ya expresó este Tribunal en aquella ocasión, no abusó de su discreción el Tribunal de Primera Instancia al permitir la contratación de un nuevo perito, y por lo tanto, no intervendremos con un ejercicio legítimo de discreción. Más aún, cuando los demandados tuvieron ocho meses para deponer al nuevo perito y no lo hicieron.

## III

Como segundo error, los apelantes señalan que el Tribunal de Primera Instancia desacertó al no añadir determinaciones de hechos adicionales. No les asiste la razón.

La Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Apéndice III, dispone que *"a moción de parte, presentada a más tardar diez (10) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes, si es que éstas no se hubieren hecho por ser innecesarias, de acuerdo a la Regla 43.2, o podrá enmendar o hacer determinaciones adicionales, y podrá enmendar la sentencia de conformidad."* Para que proceda una moción al amparo de esta Regla, la solicitud debe exponer asuntos sustanciales relacionados con determinaciones de hechos o conclusiones de derecho materiales y establecer cuál es la pertinencia de tales determinaciones, *Carattini v. Collazo Systems Analysis, Inc.,* ____ D.P.R. ____ (3 enero 2003); **2003 J.T.S. 4**, a

la página 388.

Sin embargo, es preciso reiterar que el foro de instancia no está obligado a hacer determinaciones de hechos y de derecho adicionales si estima que las mismas son innecesarias o improcedentes. La utilización de la palabra *podrá* imparte un carácter discrecional al Juez para que determine si los mismos proceden o no. El Juez tiene entera discreción para denegar una moción a tales efectos, ya que, en esencia, ésta sólo procede para corregir errores manifiestos de hechos o de derecho, *Carattini v. Collazo Systems Analysis, Inc., supra,* a la página 388; *Blás v. Hosp. Guadalupe,* 146 D.P.R. 267, 319 (1998).

En el caso de autos, la justificación del Tribunal de Primera Instancia para denegar la solicitud de determinaciones de hechos adicionales nos parece razonable ante la realidad de que la Juez que presidió la vista en su fondo ya no formaba parte de la judicatura. Por lo que, el error señalado no fue cometido.

## IV

Debido a que el tercer señalamiento de error está dirigido a cuestionar la apreciación de la prueba realizada por el tribunal *a quo*, resulta forzoso esbozar primero cuáles son los criterios de revisión judicial aplicables en nuestro sistema de derecho. Una norma reiteradamente establecida es que la apreciación de la prueba realizada por el Tribunal de Primera Instancia merece nuestra deferencia y en ausencia de pasión, prejuicio, parcialidad, error manifiesto, o que la apreciación de la evidencia sea contraria a la realidad factual, o que la prueba resulte ser inherentemente imposible o increíble, debemos abstenernos de intervenir con el criterio y la apreciación del tribunal apelado, *Monllor v. Soc. de Gananciales,* 138 D.P.R. 600, 610 (1995); *Pueblo v. Maisonave Rodríguez,* 129 D.P.R. 49, 62-63 (1991); *Pueblo v. Rivero, Lugo y Almodóvar,* 121 D.P.R. 454, 472-473 (1988).

El Tribunal Supremo ha reconocido que los tribunales de instancia están en mejor posición que los tribunales apelativos para evaluar la prueba presentada y conceder daños, toda vez que han tenido contacto directo con la prueba y han podido evaluar sus elementos visibles e intangibles. Después de todo, son los que tienen la oportunidad de ver y escuchar las declaraciones de los testigos y de examinar su comportamiento en la silla testifical, *Pueblo v. Maisonave Rodríguez, supra,* a las páginas 62-63; *Pueblo v. Rivero, Lugo y Almodóvar, supra,* a las páginas 472-473.

No obstante, el arbitrio del juzgador de hechos no es absoluto. *"Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal,"* Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982) citando a *Vda. de Morales v. De Jesús Toro,* 107 D.P.R. 826, 829 (1978). Así, pues, podemos dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que del examen de la totalidad de la evidencia quede definitiva y firmemente demostrado que un error fue cometido, *Pueblo v. Hernández Castro,* 90 D.P.R. 329, 336 (1964).

No surge de la prueba presentada en el caso ante nuestra consideración, ningún indicio de pasión, prejuicio, parcialidad o error manifiesto que de margen a la intervención de este Tribunal con la apreciación de la prueba realizada por el tribunal apelado.

El Tribunal de Primera Instancia determinó que las actuaciones del doctor Coppola fueron irrazonables, negligentes y no cumplieron con la mejor práctica de la medicina. Además, de que su falta de cuidado ocasionó que la lesión en el pie de la demandante desencadenara en una úlcera, lo que provocó una serie de complicaciones físicas y angustias mentales. El tribunal concluyó que tanto el doctor Coppola como el Hospital San Juan Capestrano dejaron de tomar las precauciones necesarias que pudieron evitar los daños previsibles ocasionados por su conducta negligente. Entre las causas que ocasionaron el detrimento de la demandante, el tribunal señaló la pobre atención brindada, los récords médicos incompletos y la falta de seguimiento en el tratamiento de la paciente. Tales acciones, no forman parte de las normas básicas de la buena práctica de la medicina.

La prueba que mereció credibilidad al tribunal demuestra que el cuidado brindado a Calzada no fue el adecuado. Calzada fue admitida al Hospital Ashford el 7 de julio de 1991 debido a una celulitis en su pie izquierdo. La celulitis fue tratada desde el 7 de julio hasta el 10 de julio de 1991 con antibióticos intravenosos. Al ser dada de alta el 10 de julio de 1991, cambiaron el antibiótico intravenoso a uno oral. De acuerdo al testimonio del Dr. Germán Malaret, una vez un paciente comienza un curso de antibióticos, la condición del paciente debe ser reevaluada dentro de un período de 48 a 72 horas. Ese período de tiempo permite determinar si el antibiótico está surtiendo efecto o no. También surge del testimonio del doctor Ortiz Rubio que Calzada es una paciente diabética que requería cuidado diario de su lesión por tener mayor riesgo de complicaciones. Sin embargo, de los 12 días que estuvo internada en el Hospital San Juan Capestrano, Calzada fue evaluada por el doctor Coppola solamente en seis ocasiones, sus notas médicas no demuestran el desarrollo del área afectada, no permitieron dar el seguimiento adecuado a la celulitis que luego advino en una úlcera, no hizo esfuerzos concienzudos para determinar a tiempo si debía cambiar o no el antibiótico, no ordenó un cultivo a tiempo y no refirió a la paciente a un especialista. No hay duda de que Calzada había dado indicios de que la lesión no estaba mejorando y las notas de enfermería demuestran que ésta sufría de dolores y de otros síntomas que indicaban la posibilidad de una infección.

Por último, el récord médico no cubrió detalladamente la condición diaria de la paciente y no describía la enfermedad con sus cambios y complicaciones, que es el propósito fundamental de éste.

En resumen, la prueba presentada no sólo establece los elementos de la causa de acción, sino que es satisfactoria y suficiente en derecho. Las determinaciones de hechos del tribunal apelado están sostenidas por la prueba; por tanto, no intervendremos con la apreciación del tribunal. El tercer error señalado no fue cometido.

## V

En el cuarto señalamiento de error, el apelante aduce que el Tribunal de Primera Instancia desacertó en los daños concedidos. Entendemos que le asiste la razón.

En cuanto a la estimación y valoración de daños, los foros apelativos también debemos abstenernos de intervenir respecto a las cantidades concedidas por el foro de instancia, a menos que éstas sean ridículamente bajas o exageradamente altas. Las acciones de daños y perjuicios bajo el Artículo 1802 del Código Civil, 31 L. P.R.A. Sección 5141, tienen un propósito reparador y no punitivo. Corresponde a los tribunales la difícil y angustiosa tarea de estimar y valorar las partidas de daños correspondientes, la cual descansa en el ejercicio discrecional, prudente y razonable del juzgador de hechos animado por un sentido de justicia y de conciencia humana. Nuestro deber es procurar que el perjudicado sea resarcido de forma justa y razonable, sin que al indemnizar al demandante, el demandado resulte castigado indirectamente, *S.L.G. v. Nationwide Ins. Co.,* 156 D.P.R.____ (18 abril 2002); **2002 J.T.S. 61**, a la página 1010; *Cotto Morales v. Ríos,* 140 D.P.R. 604, 626 (1996).

En el presente caso, luego de examinar cuidadosamente la prueba presentada por las partes, encontramos que las cantidades concedidas en daños son demasiado altas. Por lo que **MODIFICAMOS** dichas cantidades y **CONCEDEMOS $45,000.00** a Calzada y **$10,000.00** a su hijo, Igor Revilla. ■

## VI

Como último error, los apelantes aducen que erró el Tribunal de Primera Instancia al imponer honorarios de abogados e intereses legales por temeridad.

El Inciso (d) de la Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Apéndice III, dispone en lo referente a los honorarios de abogados, que *"en caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta."* Mientras, que la Regla 44.3 de

Procedimiento Civil, *supra*, indica que *"se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado."* El tribunal también puede imponer a la parte que haya procedido con temeridad el pago de intereses desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la presentación de la demanda, en caso de daños y perjuicios, y hasta la fecha de emitida la sentencia a ser computada sobre la cuantía de la misma.

La Regla 44.1 de Procedimiento Civil, *supra*, obliga al tribunal a imponer honorarios de abogado a la parte perdidosa, una vez haya realizado una determinación inicial de temeridad. Dicha determinación descansa en la sana discreción del tribunal sentenciador, *Elba A.B.M. v. U.P.R.,* 125 D.P.R. 294, 328-329 (1990). El propósito principal de esta Regla es penalizar o sancionar a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliguen a otra parte a asumir y sufrir las molestias, gastos, trabajos e inconveniencias de un litigio innecesario. Mediante este mecanismo, los tribunales protegen a los litigantes honestos de imposiciones, dilaciones y gastos innecesarios, *Miranda v. E.L.A.,* 137 D. P.R. 700, 719-720 (1994).

Aunque el concepto de temeridad no está expresamente definido por la Regla 44.1, *supra*, a través de la jurisprudencia, el mismo ha sido delimitado como la actitud proyectada sobre el procedimiento, la cual afecta el buen funcionamiento y administración de la justicia, *Elba A.B.M. v. U.P.R., supra*, a la página 329. Por ejemplo, en *Fernández v. San Juan Cement Co., Inc.,* 118 D.P.R. 713, 718-719 (1987), quedó establecido que existe temeridad cuando el demandado: (1) contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente; (2) se defiende injustificadamente de la acción; (3) no admite francamente su responsabilidad, a pesar de que la única razón que tiene para oponerse a la demanda es que considera la cuantía exagerada; (4) litiga un caso del cual surge a *prima facie* su negligencia; ó (5) niega un hecho que le consta ser cierto.

En el caso de autos, el Tribunal de Primera Instancia impuso honorarios de abogado e intereses legales desde la fecha de presentación de la demanda por considerar que los demandados fueron temerarios. Sin embargo, al evaluar la transcripción de la vista, los alegatos de las partes, la prueba presentada y la sentencia emitida, no encontramos que los apelantes hayan incurrido en temeridad, ya que, según los hechos particulares del caso, existía una controversia real en cuanto si, en efecto, el Hospital San Juan Capestrano y el doctor Coppola habían sido negligentes o no en el tratamiento brindado a la demandante. Por tanto, concluimos que el error señalado fue cometido y eliminamos la suma de $5,000.00 concedida por concepto de honorarios de abogado y ordenamos el pago de intereses legales a partir de la fecha en que la sentencia fue emitida y no desde la presentación de la demanda.

### VII

Por los fundamentos anteriormente expuestos, **MODIFICAMOS** la Sentencia apelada en los términos detallados en este escrito y así modificada, **CONFIRMAMOS** la misma.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 2003 DTA 81

**1.** El Juez Cordero entiende que no se hicieron determinaciones de los daños sufridos por el hijo, Igor Revilla Calzada. En

todo caso, el haber cumplido con su deber de un buen hijo no es compensable. El trasladar a su madre de un hospital a otra institución médica para que la atendieran no se puede clasificar como *"un daño"*. No se debe compensar a un hijo por cumplir con sus deberes para con su madre. Aunque el Código Civil, Artículo 143, 31 L.P.R.A. Sección 562, ordena el alimento entre *"los ascendientes y descendientes,"* la palabra alimentos no puede interpretarse estrictamente como el costo de casa y comida, y debe interpretarse también como el apoyo y obligación de un hijo al brindarle socorro a su madre. Véase, por analogía, *Deynes v. Texaco (P.R.), Inc.,* 92 D.P.R. 222, 226 (1965). (*"No creemos que la esposa del demandante deba recibir $3,000.00 por cumplir con un deber elemental de esposa"*).

No obstante, del récord en este caso se puede inferir que el hijo sufrió algunos daños, aunque no hubo una clara distinción entre los sufrimientos que hubiese normalmente sufrido si no hubiese existido el mal cuido a su madre, y los sufrimientos provocados por dicho mal cuido.